IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-00985-WDM-MJW

CHARLES JEFFREY McMILLIAN,

Applicant,

v.

TONY CAROCHI, Warden and
THE ATTORNEY GENERAL OF THE UNITED STATES,

Respondents.

---

## RECOMMENDATION ON STATE PRISONER'S APPLICATION FOR FEDERAL RELIEF PURSUANT TO 28 U.S.C. § 2254
## (Docket No. 3)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to a Order of Reference to United States Magistrate Judge issued by District Judge Phillip S. Figa on January 12, 2007.  (Docket No. 27).  Upon the recent passing of Judge Figa, the matter was reassigned to District Judge Walker D. Miller.  (Docket No. 38).

Before the court is the pro se incarcerated petitioner's State Prisoner's Application for Federal Relief Pursuant to 28 U.S.C. § 2254 (Docket No. 3).   In his petition, the petitioner challenges a judgment of conviction entered in the District Court of Arapahoe County following his guilty plea to second degree murder, conspiracy to commit first degree murder, retaliation against a witness, and aggravated motor vehicle theft for which he was sentenced to sixty-four years in the Colorado Department of Corrections.

**BACKGROUND**

In his opening appellate brief, petitioner summarized the facts of the crime as follows:

On November 16, 1992, Mr. Aragon, a drug dealer, was arrested in Lakewood, Colorado while in possession of unlawful narcotics and an Uzi machine gun.

Mr. Aragon believed the murder victim, Norma Lopez was the informant that caused him to be arrested. . . .

On December 10, 1992, drug dealer Aragon wanted Mr. Ingram to meet Ms. Lopez. To accomplish this, Aragon gave Ingram heroin for Ms. Lopez. . . .

Norma Lopez had a known heroin habit. . . .

Mr. Argaon told Mr. Ingram to get with Ms. Lopez, get a room on South Broadway and once Aragon was there, Ingram was to leave. Aragon gave Ingram an ounce of cocaine and wanted this done by Sunday, December 13, 1992, because Aragon was leaving town.

Arrangements were made by Ingram to pick up Norma Lopez on December 13, 1993. . . .

On December 13, 1992, at 1:30 P.M., Norma Jean Lopez, while with Mr. Ingram, had checked in at the 4-U Motel, 3850 South Broadway, Englewood, Colorado, Unit 17. . . .

Norma Jean Lopez was in a "witness protection" program with the Federal Bureau of Investigation. She was to be moved out of state two days after she was murdered. . . .

On December 13, 1992, Mr. Ingram and Ms. Lopez had gone to the 4-U Motel where he did some cocaine and she did some heroin. They had sex and then Mr. Ingram paged Mr. Aragon. Mr. Aragon and then [petitioner] showed up at the motel room. Ms. Lopez was in the bathroom when Aragon came in. When Lopez came out, Aragon accused her of being a snitch. . . .

On the snowy Sunday of December 13, 1992, Mr. Aragon wrestled Ms. Lopez to the floor and bound her legs and hands and injected her with heroin. . . .

On December 14, 1992, less than twenty-four hours later, Ms. Lopez was found dead. . . .

The autopsy report indicated death by ligature strangulation (a belt, cord, rope or wire). . . .

The [petitoner] was tied into the murder through a rental agreement in his own name, Charles J. McMillian and the statements of Mr. Ingram. . .

(Resps.' Appx. A at 6-8) (citations to record omitted).

The following additional facts were contained in the Statement of Facts in the

Answer Brief:

Aragon and the [petitioner] [] came to the motel room.  The [petitioner] was wearing big gloves, a ski mask, and a large coat.

The two men waited for Ms. Lopez to come out of the bathroom.  When she did, the [petitioner] grabbed her from behind.  After placing her in flex-cuffs, the [petitioner] and Aragon wrestled the 90 pound woman to the floor, held her down, and injected heroin into her.  Both of the men had hypodermic needles in their hands.  They then dragged Ms. Lopez into the bathroom. . . .

At one point, Aragon stated that he gave Ms. Lopez enough heroin "to kill a horse."  Aragon and the [petitioner] went around the motel room wiping away any fingerprints.  The [petitioner] stated "That's number four."  The [petitioner] broke the needles off the syringes and put them into his pocket. Before leaving the room, they cut the flex-cuffs off of Ms. Lopez's body . . . .

Because the [petitioner] had driven a rented car to the motel, and he heard that the car had been seen by witnesses there, he allowed Aragon to take the car down to Mexico.  He then called the rental company and reported the car stolen . . . .

(Resps.' Appx. B at 8-9) (citations to record omitted).

After petitioner entered his guilty plea, but before sentencing, he sent a note to

the court stating he was contacting private attorneys to advise him about withdrawing

his guilty plea.  The court appointed private counsel, who filed a Colo. Crim. P. 32(d)

motion to withdraw the guilty plea prior to sentencing.  Following a hearing, the motion

was denied in an oral ruling.  (Resps.' App. B).  On appeal of that ruling, petitioner,

through counsel, raised "issues concerning the effects of ignoring [his] seriously

'Impaired Mental Condition.'" (Resps.' Appx. A at 1). In an unpublished opinion on November 14, 1996, the Colorado Court of Appeals ("CCA") affirmed the trial court's ruling. People v. McMillian, No. 94CA1855 (Nov. 14, 1996) (Resps.' Appx. D). The court stated in significant part:

> Approximately two years prior to his arrest, defendant had been involved in an automobile accident in which he suffered a closed head injury.
>
> During the providency hearing, the trial court specifically questioned defendant about the effects of his head injury and whether it, or any medication, was affecting his ability to think clearly or understand the plea agreement. Defendant replied that he was thinking clearly and understood the proceedings. The trial court also inquired of defendant as to his short-term memory loss and whether it affected his ability to recall what he and his attorney discussed about the plea agreement prior to the hearing. Defendant replied he was not having any memory problems and that he was ready to enter his plea.
>
> Satisfied that defendant was acting voluntarily and in a knowing and intelligent manner, the court proceeded to review with the defendant the entire contents of the plea agreement. The court asked at intervals if defendant understood the various charges and their penalties, to which the defendant answered in the affirmative. The court verified that defendant's signature on the document was voluntary and found defendant understood the penalty range, the elements of the offenses to which he was entering a plea, and the rights he was waiving. The court then accepted defendant's guilty plea.
>
> . . .
>
> At the hearing [on defendant's motion to withdraw his plea pursuant to Crim. P. 32(d)], defendant argued his plea was not knowing and voluntary because, in light of his brain injury, he did not have adequate time to reflect upon the plea agreement before entering his plea. The court denied the motion, finding defendant did not present just and fair reasons for withdrawal of the plea as required by Crim. P. 32(d). Most particularly, the court noted that plea discussions had been ongoing for a considerable period, but that the final agreement with respect to sentencing limitations and recommendations had not been reached until the day prior to the entry of the plea. In addition, the court noted that, while defense counsel recognized the need to devote more time in explaining matters to the defendant, defense counsel also had no reason to believe defendant was not competent to proceed and that defendant understood the agreement and the providency hearing.
>
> At the sentencing hearing, defendant's treating neurosurgeon and neuropsychologist testified about defendant's head trauma and resulting decline

in cognitive functioning and that defendant suffered from lingering back and neck pain, for which he would require treatment while in prison. The trial court entered judgment of conviction and sentenced defendant to sixty-four years with the Department of Corrections.

## I.

Defendant's argument on appeal is that he should be permitted to withdraw his plea of guilty because his "impaired mental condition" rendered him incapable of making a knowing, voluntary, and intelligent plea. We disagree.

. . . We view defendant's argument as a competency argument.

. . .

Here, no issue concerning competency was raised by defendant before the trial court, nor was his competency otherwise put into question so as to require an extended inquiry.

The principal issue addressed at the Crim. P. 32(d) hearing was that defendant had a very short period within which to consider the plea agreement. Defendant explained at length his inability to remember things from day to day, and his difficulty organizing his thoughts and communicating clearly. Defendant testified that he did not remember any of the salient events surrounding the execution of the plea agreement, conferences with counsel, or the providency hearing. Defendant's medical records were available at the hearing.

The only evidence of defendant's competency at the Crim P. 32(d) hearing was the testimony of his plea counsel who testified that, in his opinion, defendant was competent to proceed.

With respect to the time issue, plea counsel testified that plea negotiations had been proceeding for months with defendant's knowledge and encouragement. A tentative plea agreement, which called for favorable sentencing concessions, was conditioned on defendant passing a polygraph examination which was administered the Friday prior to the entry of the plea. Defendant failed the polygraph.

Plea discussions continued through the ensuing weekend during which agreement between counsel on the final sentencing concessions was reached. Plea counsel testified that he orally presented the terms of a new agreement to defendant on Sunday afternoon, thoroughly discussed the terms of the entire agreement with defendant at that time, and defendant accepted. The final written plea agreement was delivered to defendant by plea counsel on Monday morning, was thoroughly discussed, and defendant signed the agreement. The plea was entered that afternoon.

At the sentencing hearing, the two expert witnesses testified as to defendant's cognitive deficits and his ongoing neck problems.  It is apparent from a review of the record that the purpose of this testimony was to notify the Department of Corrections of defendant's ongoing limitations and treatment requirements.  Neither witness was asked any question concerning competence.  No argument was made which even addressed the testimony of the experts except with respect to providing notice to the Department of Corrections of defendant's treatment needs.

Therefore, the trial court was not put on notice that defendant was incompetent to proceed so as to require an inquiry, nor was defendant's competency placed in issue.

II.

Defendant also argues the trial court improperly denied his motion to withdraw his plea.  We disagree.

. . .

In the hearing on his Crim. P. 32(d) motion to withdraw his plea, defendant argued that he did not enter the plea agreement voluntarily and knowingly because of the lack of time to consider the plea agreement.  The record which we have already characterized supports the contrary conclusion reached by the trial court.  In our view, the trial court did not abuse its discretion in concluding that defendant had not met his burden to provide a just and fair reason for withdrawing his plea.

III.

Defendant next contends that failure to raise the issue of mental impairment constituted ineffective assistance of counsel.  Because this issue was not raised in the trial court and there is no record on the issue, we decline to address it.

. . .

(Resps. Appx. D).  On May 19, 1997, the Colorado Supreme Court denied certiorari, and the Mandate issued on May 29, 1997.  (Resps.' Appx. G & H).

On or about the same or next day, petitioner filed a Crim. P. 35(c) motion in the state District Court in which he alleged that he was denied effective assistance of counsel during his plea because his attorneys failed to raise the affirmative defense of

impaired mental condition. (Resps.' Appx. I). An evidentiary hearing was held on this motion, during which testimony was heard from eight witnesses concerning petitioner's head injuries sustained in the 1990 auto accident and his legal representation. (Resps.' Appx. J at 44). The trial court issued its ruling, denying the motion, finding as follows:

> . . . The Court finds that the actions of defense counsel, Mr. Bowen and Kristi Sanders were well within acceptable standards, that the decision not to plead impaired mental condition, did not document the decision more fully, is well within accepted standards.
>
> The decision not to order a written report from Dr. Yost is sound trial strategy. When you get an unfavorable opinion, you don't want that report floating around. It can be used against you, and it's well within the accepted standards for attorneys not to use or require a written report when you get an unfavorable opinion from a doctor.
>
> In addition, the opinion of Dr. Yost is more than sufficient to justify not recommending to the client the entry of the affirmative defense of impaired mental condition or insanity.
>
> The court further finds based on the evidence the two attorneys did fall within the Steward analysis in that the decision to be made as to whether to plead not guilty by reason of impaired mental condition or insanity was after consultation made by the Defendant with full disclosure and knowledge.
>
> Even if the Court were to find that I needed to address the second prong, the Court will go on to make alternative findings. Assuming that the Court could make findings to sustain the first prong of the Strickland analysis, the Court would then have to find that the Defendant has affirmatively proved that he was prejudiced by the deficient performance of counsel; that is, that he wouldn't have pled guilty in a plea bargain and that he should have entered the impaired mental condition affirmative defense and gone to trial.
>
> The Defendant must show a but for test that there is a reasonable probability that but for counsel's error in not asserting the affirmative defense of impaired mental condition, the result would be different.
>
> The Court based on the evidence, the record and the exhibits cannot conclude that the entry of an impaired mental condition defense would have changed the outcome of the trial had there been one.

This is partly based on the testimony of Dr. Krause, who indicated when he was on the stand he didn't want to be here, but that he didn't feel he was qualified to testify, and that he was a prior client of Mr. Kintzele's or Mr. Kintzele had used him in the past on a work comp case, I believe was the testimony.

When you look at the factors as set forth in <u>Lockhart</u> . . . we're talking about a case where the entry of a plea was taken. That case deals with a plea rather than a trial, and in that case we're talking about even if the defendant had insisted on entering an impaired mental condition plea, would defendant still have accepted the plea bargain.

Well, if he had wanted to enter an impaired mental condition plea or explore that, entertained it, would he still have accepted the plea bargain. There again, we get back to the but for test. But for the advice not to enter the IMC plea, is there a reasonable probability but for the failure to enter the plea that he wouldn't have pleaded guilty and he would have instead insisted on a trial. There's strong evidence of guilt in this case.

If you look at the evidence in the <u>Evans v. Meyer</u> case, . . . we get into the lawyer's duties and obligations. Must a lawyer recommend that every possible defense in the kitchen be presented at trial. As stated in the <u>Evans</u> case, it's not normal practice of lawyers to advise their clients of every defense or every tactic that is theoretically possible. This would create an exquisite conflict between the lawyer's duty to his client and justice. The lawyer must maintain some credibility with the jury in order to be an effective advocate for his client, and to put forth a defense just for the fact of putting forth a defense would by necessity destroy the credibility of the attorneys.

The Court for the foregoing reasons will deny defense motion under 35(c) finding that the actions of the attorneys were well within the norms of practice. So the motion's denied.

(Resps.' Appx. J at 51-54).

According to the petitioner, on October 13, 1998, he filed a pro se Motion for Introduction of New Evidence, Supplement to 35(c), in the state District Court. (Docket No. 3 at 282, ¶ 10). At a hearing, the state judge advised petitioner to return when jurisdiction was returned from the CCA. (Docket No. 3 at 283, ¶ 11).

On February 18, 1999, petitioner, through counsel, filed a Motion for Second Limited Remand To Have the District Court Further Complete The Record By Taking

Testimony on Defendant/Appellant's Additional Bases For Crim P. Rule 35(c) Relief,

(Newly Discovered Medical Records).  See Docket No. 3 at 283 ¶ 12).  That motion

was denied by the CCA on February 26, 1999.  See Docket No. 8-1 at 3.

On April 15, 1999, the CCA affirmed the lower court's denial of the petitioner's

Crim. P. 35(c) motion, stating as follows:

> Here, the trial court found, in part, that defendant did not meet his
> burden of showing that the deficient performance of counsel, if any, caused him
> prejudice.  We agree with the trial court's conclusion.

> At the Crim P. 35(c) hearing, defendant failed to present <u>any</u> evidence
> showing a reasonable probability that had counsel raised the mental
> incompetency defense he would not have pled guilty and, instead, would have
> insisted on going to trial.  Rather, the evidence presented by defendant,
> including his own testimony, focused solely on the first prong of the <u>Strickland</u>
> test.

> Here, there was substantial evidence of guilt against defendant.
> Specifically, defendant's accomplice implicated him as a full participant in the
> murder of the victim, and the version of the events set forth by the accomplice
> was corroborated by several other witness accounts, by physical evidence
> recovered, and through records confirming that the car used in the crime was
> rented by the defendant.  Furthermore, defendant made statements to police
> confessing his participation in the murder and cover-up.

> Also of note is the opinion of the forensic psychiatrist who was hired by
> defense counsel to assess the viability of an impaired mental condition defense.
> the psychiatrist opined, based on two interviews with defendant and upon
> evaluating defendant's medical records, that defendant did not meet the criteria
> for the legal definition of either insanity or impaired mental condition.  This
> opinion was buttressed by a neurosurgeon who treated defendant after an
> accident in 1990.

> The overwhelming evidence of defendant's guilt, along with the absence
> of any evidence that defendant meets the definition of impaired mental
> condition, leads us to conclude that it is highly improbably that defendant would
> have insisted on going to trial rather than accepting a plea, even had defense
> counsel counseled defendant on, or raised, the defense of impaired mental
> condition.  Thus, because defendant has failed to make an affirmative
> demonstration of prejudice, we reject his contention without determining
> whether his counsel's performance was constitutionally deficient. . . .

> We do not consider defendant's remaining contentions, as these were

not raised in his Crim P. 35(c) motion nor ruled upon by the trial court, and accordingly, are not properly before this court on appeal. . . .

(Resps.' Appx. N at 3-4 & Docket No. 33-16 at 13).

On April 22, 1999, petitioner, through counsel, filed a Petition for Re-Hearing of the Judgment Affirmed on April 15, 1999 (Docket No. 33-16 at 22), in which he asserted, *inter alia*, that the appellate court "erroneously and reversibly misapprehended or overlooked or declined to consider the following: Failure to remand to the Trial Court to allow defendant to additionally raise the issues of his being also further impaired by Halcion at the time of the guilty plea in November, 1993." (Docket No. 33-16 at 22). In his Petition for Writ of Certiorari, dated June 15, 1999, petitioner, through counsel, asserted, *inter alia*, that the appellate court erroneously denied his motion for limited remand and oral argument, asserting that "Petitioner at the time of his guilty plea was taking Halcion, a sleeping medicine, along with his other problems." (Resps.' Appx. O at 4; Resps.' Appx. Q at 7 [Petitioner's Reply]). The Petition for Writ of Certiorari was denied on September 27, 1999. (Resps.' Appx. R).

In April 2000, the pro se petitioner filed in the trial court a motion to hear evidence in which he asserted:

> The newly discovered medical records show the evidence of prescribed Halcion at the plea - agreement hearing. Thus, there exist evidence of material facts to show "impaired mental conditions", not therefore presented and heard in this case, which, by the exercise of reasonable diligence, was not known or learned by the defendant's attorneys prior to the submission of the medical records October 28, 1998, and which requires an evidentiary hearing in the interest of justice.

(Resps.' Appx. T). That motion was denied on August 27, 2003, as being time-barred pursuant to § 16-5-402, C.R.S. The court stated:

Some of these issues have already been addressed previously in the case. And the Court of Appeals decision of November 14, 1996, the Court noted that at the trial level, the trial court specifically questioned the defendant about various possible effects arising from a head injury, or any medication and the like, whether it was affecting his ability to think clearly or understand the plea agreement.

The Court noted the defendant replied he was thinking clearly and understood the proceedings. The trial Court also inquired of the defendant as to short-term memory loss and whether it affected his ability to recall various matters. The defendant replied he is not having any memory problems, and he is ready to enter his plea, which the Court subsequently accepted.

The Court of Appeals rejected the defendant's argument in that case of impaired mental condition, rendering him incapable of making a knowing, voluntary, and intelligent plea.

This Court notes that it is the defendant's burden of showing a fair and unjust reason for withdrawing a plea, and it is the defense burden of showing justifiable excuse why the matters couldn't have been raised within the time parameters set forth in 16-5-402.

The Court is unpersuaded that the defense has met that burden. The Court is not able to find sufficient support for any claim of justifiable excuse for not complying with 16-5-402, and the claims are time barred, simply should have been raised earlier. Effectiveness of counsel was previously addressed, and the mental capacity of the defendant to understand what he was doing when he voluntarily pled guilty has been already adjudicated.

It would appear that the defense argument is essentially that virtually innumerable additional separate bases can be advanced why the defendant did not understand what he was doing when he pled guilty. For example, notwithstanding how this proceeding is resolved, two years from now, the defendant could come back and say he was under cold medicine medication and that cold medicine was never specifically addressed, and that has to be relitigated. And one could think of an unending litany of additional claims of mental inability to understand the plea. And the issue of competence of counsel has already been addressed, both at the trial and appellate court levels.

And it seems that the defense is addressing the proposition that as additional theories of defense counsel's incompetence or ineffectiveness can be imagined in the future, that each one of these issues can be just advanced one at a time rather than whether the competence of counsel can be addressed once, or whether it can be addressed piecemeal over a period of decades, and I'm finding that it can't be, that that issue has been resolved.

But in any event, all of these issues at this point in the history of the

case, they are time barred under that statute, and on that basis, the Court
denies the motion for withdrawal of plea. . . .

(Resps.' Appx. U).

On December 23, 2004, the CCA affirmed the trial court's order denying his

Crim. P. 35(c), stating as follows:

> In 1993, defendant pleaded guilty to second degree murder, conspiracy
> to commit first degree murder, retaliation against a witness, and aggravated
> motor vehicle theft.  Prior to sentencing, defendant filed a Crim. P. 32(d) motion
> to withdraw his plea claiming his "impaired mental condition" rendered him
> incapable of making a knowing, voluntary, and intelligent plea.  After an
> evidentiary hearing, the trial court denied the motion and sentenced defendant
> to sixty-four years in the Department of Corrections.  The order was affirmed on
> appeal. . . .

> In 1997, defendant filed a Crim P. 35(c) motion alleging that plea
> counsel was ineffective because he failed to raise the affirmative defense of
> impaired mental condition.  After an evidentiary hearing in which eight witnesses
> testified, the trial court denied defendant's motion in a lengthy order.  The order
> was affirmed on appeal. . . .

> In 2000, defendant filed his Crim. P. 35(c) motion at issue here.  In his
> motion, he alleged that his guilty plea should be set aside because he was on
> Halcion at the time of his plea.  After hearing arguments of counsel, the trial
> court denied the motion finding that the motion was time barred, that § 16-5-
> 402, C.R.S. 2004, is constitutional, and that the issues of the voluntariness of
> defendant's plea and ineffective assistance of plea counsel had already been
> litigated.  This appeal followed.

> Defendant contends that the trial court erred in finding that his Crim. P.
> 35(c) motion was time barred and that § 16-5-402 is constitutional.  Defendant asserts that the
> issues raised have merit and should have been considered by the trial court.  Even if timely,
> defendant's claims have already been fully litigated, and we agree with the trial court that
> defendant's motion was successive.

> In the absence of special circumstances, a trial court need not entertain
> successive motions for similar relief based on the same or similar allegations of
> the same prisoner.  Crim. P. 35(c)(3); . . .

> In the motion at issue here, defendant raised no new bases for relief that
> differed from those raised in his Crim P. 32(d) motion or his first Crim. P. 35(c)
> motion.  In his previous two motions, defendant raised both ineffective
> assistance of plea counsel and his "impaired mental condition."  The argument
> advanced here was available to defendant when he filed his Crim. P. 32(d)

motion to withdraw his plea and his first Crim. P. 35(c) motion.  We have not been presented with, nor do we perceive, any special circumstances which justify another attack based on allegations that have been previously reviewed. . . .

In light of our disposition, we need not address defendant's other contentions.

The order is affirmed.

(Resps.' Appx. Y).  The Colorado Supreme Court denied the Petition for Writ of Certiorari on April 25, 2005, and the Mandate issued on May 3, 2005.  (Resps.' Appx. BB and CC).

On May 23, 2005, this court received the petitioner's State Prisoner's Application for Federal Relief Pursuant to 28 U.S.C. § 2254 (Docket No. 3).  On July 28, 2005, in an Order and Judgment of Dismissal, Senior Judge Zita L. Weinshienk denied the habeas corpus application and dismissed it as barred by the one-year limitations period in 28 U.S.C. § 2244(d).  (Docket No. 10).  That Order, however, was subsequently vacated by an Order and Judgment issued on October 12, 2006, by the Tenth Circuit Court of Appeals which found that the district court erred in ruling that the § 2254 petition was untimely.  (Docket No. 24).  Accordingly, this civil action was reinstated (Docket No. 25), and the matter was referred to the undersigned for a report and recommendation.  (Docket No. 27).  The respondents timely filed an Answer (Docket No. 33).  The court now being fully informed makes the following findings, conclusions, and recommendation that the petition be denied and this action be dismissed.

**Petitioner's Claims**

In his petition, the petitioner raises the following three claims for habeas relief.

Claim One.  First, petitioner asserts that his guilty plea was not a free and voluntary act in violation of his right to due process as guaranteed by the Sixth and Fourteenth Amendments.  More specifically, petitioner asserts the following.  He was under the influence of prescription medication benzodiazepine (Halcion) at the time and after he was coerced into changing his plea to guilty.  At the time he entered his guilty plea on November 22, 1993, the court asked if the drug Halcion was affecting his ability to think, reason, or communicate and whether he was thinking clearly.  Petitioner responded, "yes," but having noticed a pause and confusion, the court questioned petitioner regarding his mental state and then improperly contorted petitioner's answer. It is a documented fact that one of the results from the petitioner's closed head injury is a slowed speed of processing.  Petitioner was then told by his attorney, Public Defender Daniel Bowen, that if petitioner admitted that the drug Halcion was affecting his ability to think clearly, petitioner would do life in prison.  Bowen then stated that he would nod his head yes or no to the questions asked by the court, and petitioner was to respond accordingly.  Petitioner was under the influence of .5 mg. of Halcion at the time he changed his plea to guilty.  The plea was thus invalid to the extent that it was not a free and voluntary act.  The .5 mg. amount of Halcion has been proven to incapacitate a person to such a degree of mental absence that the manufacturer had to reduce the maximum dosage to .25 mg., which was half the amount petitioner was under the influence of at the November 22, 1993, plea agreement hearing.

Claim Two.  In his second claim for habeas relief, petitioner alleges ineffective assistance of counsel.  More specifically, he asserts the following.  The performance of

Public Defenders Bowen and Kristi Sanders was deficient due to their failure to investigate the probable defense of involuntary intoxication pursuant to § 18-1-804(3) and (5), C.R.S. Petitioner had advised them that he had been involuntarily intoxicated at the time of the crime by the influence of the Halcion, which was prescribed by his neurosurgeon. After his arrest, petitioner continued to be involuntarily intoxicated due to the influence of Halcion because it was prescribed at the Arapahoe County Detention Facility by Dr. Jay Carlson. The Halcion issue first came before the trial court on April 12, 1993, during the preliminary hearing. Petitioner was never advised by counsel of the possible defenses associated with the drug, which violated his right to equal protection. Counsel never investigated these possible defenses and allowed the petitioner to be subject to further legal proceedings he clearly did not understand due to the continuous involuntary intoxication. Petitioner was prejudiced because of counsel's actions precluding a court or a jury from considering the viable defense of involuntary intoxication, and the result of the criminal proceedings would have been different. Counsels' strategic decision to plead this case was objectively unreasonable.

In addition, on November 22, 1993, at petitioner's plea agreement hearing, Bowen's performance was deficient when he allowed petitioner to change his plea to guilty while noticeably and factually intoxicated by Halcion. At the beginning of the hearing, Bowen had to write out a confession statement that was necessary for the murder conviction for petitioner to copy because petitioner could not understand what Bowen was asking him to do. During that hearing, Bowen coerced the petitioner by advising him to perjure himself as to the effects of the Halcion. Petitioner advised

Bowen that he did not understand what was going on, and Bowen told him he would nod his head yes or no to the questions asked by the court and for petitioner to respond accordingly.

Next, on June 28, 1994, Bowen's performance at the sentencing hearing was deficient due to his failure to present all mitigating evidence.

On March 4 and May 3, 1994, at petitioner's Crim. P. 32(d) withdrawal of plea hearing, court-appointed counsel Forrest Lewis's performance was deficient due to his failure to represent petitioner's innocence to the alleged crimes by asserting a defense of involuntary intoxication caused by Halcion. Petitioner advised Lewis of his innocence in the alleged crimes and that he was under the influence of Halcion at the time of the alleged crimes. In addition, Lewis failed to claim petitioner's plea on November 22, 1993, was not voluntary because it was entered while noticeably and factually intoxicated by the influence of Halcion, which was prescribed by the doctor at the detention facility. In addition, log sheets show that petitioner was continuously under the influence of .5 mg. of Halcion at the March 4 and May 3, 1994, Rule 32(d) withdrawal of plea hearings during which his due process rights were again violated.

Appointed counsel Jack Kintzele's performance was also deficient in the direct appeal of the ruling on the 32(d) plea hearing due to his failure to claim petitioner's innocence in the alleged crimes by asserting a viable defense of involuntary intoxication due to Halcion. Kintzele met with petitioner at the Limon Correctional Facility in August 1995, and petitioner advised him of his innocence due to being under the influence of Halcion at the time of the alleged crime, as well as the fact that he was

under the influence of the drug during the plea and the withdrawal of plea hearing. Nevertheless, Kintzele also failed to claim the petitioner's plea was not voluntary due to the Halcion. Kintzele investigated the drug, but he concealed his findings rather than disclose them to the petitioner. Kintzele's performance was also deficient because he did not order or obtain the plea agreement hearing transcripts until 1.5 years after the case was finalized by Mandate, and Kintzele did so only after the petitioner demanded to know why this transcript was not cited in the appeal.

Claim Three. In his third claim for habeas relief, petitioner alleges that the violations in Claims One and Two above resulted in an equal protection violation. Petitioner notes five other criminal cases in which the defendants successfully used Halcion defenses, i.e, charges were dismissed, a defendant was given a new trial and set free, another was adjudicated as partially responsible for the criminal act, and yet another was ruled insane.

In response, respondents assert that four parts of Claim Two and all of Claim Three were not exhausted and have been procedurally defaulted and that Claim One and the second part of Claim Two were defaulted in state court pursuant to the successive petition rule. This court agrees with the respondents' arguments.

"Except for a few narrow exceptions, § 2254 habeas petitioners must exhaust available state court remedies before seeking habeas relief." Cannon v. Gibson, 259 F.3d 1253, 1265 (10th Cir. 2001) (citing § 2254(b)(1)). To satisfy this requirement, the petitioner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process.'" <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). Section 2254 of Title 28, U.S.C., as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides as follows with regard to exhaustion of state court remedies:

. . .

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. . . .

28 U.S.C. § 2254(b), (c).

Here, respondents accurately state that petitioner's first claim (that his plea was involuntary because he was under the influence of Halcion) and one part of his second claim (that his plea counsel were ineffective for allowing him to enter a guilty plea while under the influence of Halcion) were raised in petitioner's 2000 post-conviction motion.

(See Resps.' Appx. T). The state trial court's denial of those claims was appealed by the petitioner to the CCA and the Colorado Supreme Court. (See Resps.' Appx. V and W.) Therefore, those claims have been exhausted.

Nevertheless, this court finds that those claims were defaulted in state court on an independent and adequate state procedural ground. Except for circumstances not pertinent here, Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure provides in pertinent part that "[t]he court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought . . . ." As the Colorado Supreme Court has recognized, "[c]ase law and Crim. P. 35(c) make it clear that a court should not entertain repetitive motions for post-conviction relief. . . . [w]here a post-conviction application is filed, it should contain all factual and legal contentions of which the applicant knew at the time of filing, and failure to do so will, unless special circumstances exist, ordinarily result in a second application containing such grounds being summarily denied." Turman v. Buckallew, 784 P.2d 774, 780 (Colo. 1989) (quotation omitted).

Here, the petitioner's post-conviction motion containing these claims was denied by the trial court as untimely and successive. As noted above, the trial court stated that the petitioner's 35(c) "claims are time barred, simply should have been raised earlier. Effectiveness of counsel was previously addressed, and the mental capacity of the defendant to understand what he was doing when he voluntarily pled guilty has been already adjudicated." (Resps.' Appx. N). Furthermore, when the CCA reviewed that decision, it found that "[e]ven if timely, defendant's claims have already been fully

litigated, and we agree with the trial court that defendant's motion was successive. "

(Resps.' Appx. Y). The court stated:

> In the absence of special circumstances, a trial court need not entertain successive motions for similar relief based on the same or similar allegations of the same prisoner. Crim. P. 35(c)(3); . . .

> In the motion at issue here, defendant raised no new bases for relief that differed from those raised in his Crim P. 32(d) motion or his first Crim. P. 35(c) motion. In his previous two motions, defendant raised both ineffective assistance of plea counsel and his "impaired mental condition." The argument advanced here was available to defendant when he filed his Crim. P. 32(d) motion to withdraw his plea and his first Crim. P. 35(c) motion. We have not been presented with, nor do we perceive, any special circumstances which justify another attack based on allegations that have been previously reviewed. . . .

(Resps.' Appx. Y).

"Generally speaking, we do not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." Cummings v. Sirmons, 506 F.3d 1211, 1224 (10th Cir. 2007) (quotation omitted). See See Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998) ("A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. . . . For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims.") (quotations omitted). For this court to review the merits of these claims that have been procedurally defaulted in state court, petitioner must show either (1) both cause for the default and prejudice therefrom or (2) a fundamental miscarriage of justice such as a colorable showing of factual innocence. Coleman v. Thompson, 501 U.S. 722, 749 (1991). "To demonstrate cause and actual prejudice, Petitioner must show that efforts to raise the

claims at earlier stages were impeded by 'some objective factor,' such as a factual or legal basis for a claim that was not reasonably available during prior proceedings. . . . This objective standard considers not what a particular attorney or *pro se* Petitioner actually knew, but whether the claim was 'reasonably available' upon diligent inquiry." Navarro v. Leyba, 2007 WL 2908832, *7 (D. Colo. Oct. 4, 2007) (quoting McCleskey v. Zant, 499 U.S. 467, 493-94, 496 (1991)). Here, there is no showing that petitioner's claims were not reasonably available upon diligent inquiry during his appeal or post-conviction motions, nor has there been any showing of any objective factor that prevented efforts to raise the claims earlier. Furthermore, "[t]o demonstrate a fundamental miscarriage of justice, Petitioner must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent." Id. at *8 (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). No such showing has been made. In fact, the CCA noted in its April 15, 1999, ruling that the evidence against the petitioner was overwhelming. (See Resps.' Appx. N). Therefore, this court need not review the merits of the petitioner's claims that his plea was involuntary because he was under the influence of Halcion and that his plea counsel were ineffective for allowing him to enter a guilty plea while under the influence of Halcion.

The remainder of the petitioner's habeas claims are raised for the first time here and thus have not been exhausted. Petitioner never raised in state court his claims here that he was on Halcion at the time of the murder, that plea counsel were ineffective because they did not advise him of or investigate potential Halcion defenses prior to his plea and did not present all mitigating evidence at his sentencing hearing,

that appointed counsel who assisted him with his motion to withdraw his plea was ineffective because he did not advise him of or raise potential Halcion defenses and did not argue that he was under the influence of Halcion when the plea was entered, that counsel appointed to represent him in the appeal of the ruling on the 32(d) motion was ineffective by failing to argue that petitioner was under the influence of Halcion at the time the crime, at the time of his plea, and at the time of his motion to withdraw the plea, and that his right to equal protection was violated because other defendants have successfully used Halcion defenses.

Any attempt to raise these unexhausted claims in state court in yet another post-conviction motion would be rejected as successive. See Colo. R. Crim. P. 35(c)(3)(VII) (with exceptions not applicable here, state post-conviction court shall deny any claim that could have been presented in a previous appeal); People v. Hubbard, 184 Colo. 243 (1974) (successive application rule). In situations like this, federal courts apply an anticipatory bar. Anderson v. Sirmons, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007). ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it."). "Under an anticipatory bar, this Court is procedurally barred from considering the Petitioner's claims, unless he can demonstrate 'cause and prejudice' for the default, or demonstrate that a fundamental miscarriage of justice would result." Navarro v. Leyba, 2007 WL 2908832, *7 (D. Colo. Oct. 4, 2007). (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). No such showing has been made.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the State Prisoner's Application for Federal Relief

Pursuant to 28 U.S.C. § 2254 (Docket No. 3) be **DENIED** and this action be

**DISMISSED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case. The District Judge need not consider frivolous, conclusive,**

**or general objections. A party's failure to file and serve such written, specific**

**objections waives *de novo* review of the recommendation by the District Judge,**

**Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives**

**appellate review of both factual and legal questions. Makin v. Colorado Dep't of**

**Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,**

**1412-13 (10th Cir. 1996).**

Date: March 24, 2008                    s/ Michael J. Watanabe
      Denver, Colorado                    Michael J. Watanabe
                                          United States Magistrate Judge